# SUPREME COURT OF PENNSYLVANIA.

### MORRISON AND WIFE vs THE DOLLAR SAVINGS BANK.

Any words are sufficient to make a separate use for a wife which distinctly and unequivocally express the intention to vest in her a separate estate; whenever such intention is not so expressed, they are insufficient.

The words "not to be liable for the debts of her said husband" in a devise of real estate in fee to a married daughter are not the proper technical or equivalent words to create a separate use for the wife, and are insufficient, unless the clear intendment be to bar the husband's marital rights.

Error to the Court of Common Pleas No. 1 of Allegheny county.

*Sci. fa. sur.* mortgage by the Dollar Savings Bank against John Morrison and Hannah A. Morrison, his wife. The defendant, Hannah Ann Morrison, filed an affidavit of defence, averring "that she is not indebted in the above case to the plaintiff in the sum of $9,000, with interest from the 1st day of October, 1876, at the rate of eight per cent. per annum, and five per cent. attorney's commission, as set forth in plaintiff's affidavit of claim, nor is she indebted in any sum of money whatever in said case; that, as she is informed and verily believes, she has a full, just and legal defence to the whole of the claim sued upon in this case, which defence is as follows, to wit, that the property covered by the alleged mortgage was devised to her by and title thereto became vested in her as her separate property under the will of her father, Hugh Davis, deceased, which said devise is set forth therein in the following words, to wit: "And to my daughter Hannah, wife of John Morrison, her heirs and assigns, I give, devise and bequeath the other undivided one-fourth part of all my estate, real personal and mixed." "The property above devised and bequeathed to my daughter Hannah is not to be liable for the debts of her said husband," which will is hereby made part of this affidavit; *and further*, said title became vested in her by deed of partition between the said Hannah A. Morrison, Mary A. Davis, guardian of the estate of the children of

William M. Davis, deceased, Robert H. Davis and Henderson E. Davis, heirs and devisees under the will of said Hugh Davis, deceased, which deed of partition is dated the 4th day of April, A. D. 1863, and duly recorded, and which said deed of partition is made part of this affidavit. That the moneys raised upon the alleged mortgage, if any, were not applied to the payment of any debt of her contracting, or of any debt contracted in her name by any person authorized so to do, nor for necessaries for her family, nor for the improvement of her estate."

The court below (STOWE, P. J.) entered judgment for want of a sufficient affidavit of defence, which is assigned for error.

Opinion by TRUNKEY, J.   Jan. 6, 1879.

The first three propositions of the counsel for plaintiff in error are undeniable. They are: 1. In Pennsylvania a married woman has no power over her equitable separate estate, except such as is conferred upon her by the instrument creating the estate; 2. That said estate will be upheld in equity though no trustee be named; and 3. That if the will of Hugh Davis vested in his daughter Hannah an estate for her separate use the mortgage is void.

Equally well settled is another proposition, to wit: "While no particular language is indispensable, yet the claim of the wife to a separate use being against common right, the instrument under which it is made must clearly speak the donor's intention to bar the husband's marital rights or it cannot be allowed." Per Strong, J. Tritt's Administrator vs. Colwell's Administrator, 11 Casey, 228. In the multitude of cases, many of them apparently irreconcilable, bearing on the question of what words will make a separate use for the wife, this is palpable, that any words are sufficient which distinctly and unequivocally express the intention to vest in her a separate estate, and wherever such intention is not so expressed, they are insufficient. This rule seems universally recognized, but opinions have widely differed upon the meaning of words

and phrases. It matters not how the point is put, for to say, the donor intended to exclude the husband from his marital rights, means neither more nor less than to say he intended to give the wife a separate use. To do the one is to do the other also. The present inquiry is not affected by the Act of 1848, for married women may dispose of the estates secured to them by that statute in the modes provided by law. But the fact that it secures their estates from liability for debts and contracts of their husbands ought not to be overlooked when construing the language of the devises and bequests to Mrs. Morrison. The testator's intention, as it appears in the will, must have effect, and to reach this, if possible the words are "to receive a construction which will give to every expression some effect, rather than one which will render any of the expressions inoperative."

A notable feature of Hugh Davis' will is its perspicuity. It bears no evidence on its face, that he was hindered by sickness, or wanted good advice, for it is not made "in a disordered manner, or in barbarous and unfit words," but its various devises, bequests and directions are in "apt words and terms," full and easily understood, leaving no room for doubt of the meaning, except as to the effect of the clause relative to liability of his daughter's portion for her husband's debts. And here the difficulty arises upon the legal effect of a plain direction. Premising that the devises to his sons and daughter are in similar form, we note the provisions for Mrs. Morrison, in their order, as the best mode of ascertaining the nature of her estate. "The other undivided three–fourths of all my estate, real, personal and mixed, I give, devise and bequeath to my three children now living, to wit, Robert H. Davis, Henderson E. Davis and Hannah, wife of John Morrison, their heirs and assigns forever. That is to say, * * and to my daughter Hannah, wife of John Morrison, her heirs and assigns, I give, devise and bequeath the other undivided one-fourth part of all my estate, real, personal and mixed. And further, I give and bequeath

to my daughter Hannah, in addition to the above devise and bequest, all my household furniture of every description in the house where I now reside. The property above devised and bequeathed to my daughter Hannah is not to be liable for the debts of her said husband." The testator next directs that if he or his estate becomes liable, as security for John Morrison, the same, not exceeding $5,000, shall be deducted from the share of Hannah, and so none of the other shares will be lessened by reason of said indebtedness. Then follows directions for partition of the real estate, his daughter Hannah to have the choice of shares so she can take his dwelling house. "The share or purpart chosen by Hannah Morrison is to vest in her, and her heirs and assigns forever." And like estate is given to his sons and grandchildren for their respective shares; and the devisees are to execute a deed of partition, "by which the shares or purparts shall vest as above directed."

A vivid imagination, warmed by sympathy for a woman who too freely encumbered her estate, may see in this will a purpose to vest in her a mere use of that estate, without power of disposition, notwithstanding no trustee is named, nor use declared, and her legal title is positively expressed. Not a sign of intention to create separate use of the property in the wife is discoverable in any part of the will, save the clause that "it is not to be liable for the debts of her said husband." First and last the testator uses apt technical words, same as used in the devises to his sons and grandchildren, three times repeated after the said clause, to clothe her with an estate in fee. He "is presumed to employ them in their legal sense unless the context clearly indicates the contrary." In this will no room is left for departure from the appropriate meaning of technical and other words. The clause relative to the husband's debts is plain. What may be its legal force, having reference to the Act of 1848, relative to estates of married women, is not so visible, but unless its clear intendment be to bar the husband's marital rights,

the wife took a fee simple estate. To doubt is to resolve against the use. The learned counsel justly admitted that the words used are not the proper technical words to create a separate use for the wife; and their research failed in adducing a case where such words had that effect. We do not think they were equivalent words, certainly not, with the context. Upon the whole we come unhesitatingly to the conclusion that the legal estate in fee is in Mrs. Morrison.

Judgment affirmed.—*Intelligencer.*

## NOTES OF RECENT DECISIONS IN SUPREME COURT OF PENNSYLVANIA.

Where a church corporation has accepted and enjoyed a decree in equity in an action presented in its behalf by some of its members, it cannot afterwards in another proceeding substantially the same be allowed to say that the former proceeding was not instituted and prosecuted for its benefit, and that it is not bound by such portions of the decree therein as are unfavorable to it.

The Third Reformed Dutch Church, upon surrender of the church property according to the decree in Jones et. al. vs. Wadsworth et. al. (4 WEEKLY NOTES, 514) filed a bill in equity in the name of the corporation against the trustees of the corporation to restrain them from prosecuting actions at law upon notes of the corporation, and asking for discovery and account of rents and profits of the church property during the period of change in the ecclesiastical relations of the church. The Court below, after a hearing on demurrer, dismissed the bill:

*Held,* (affirming the decree of the Court below), that there was no equity in the demand upon the defendants to discover and account for funds which admittedly were paid out for the salary of the minister and other expenses of maintaining the church.—*Third Reformed Dutch Church's Appeal.*

A school district had the privilege of occupying for school purposes certain ground belonging to M., who verbally agreed to pay, and the school board agreed to receive, a specified sum for the school house which for twenty-five years had stood upon his land, upon condition that the school board would not condemn his ground for the erection of a new school house, but would abandon his land and build elsewhere. In an action by the school district to recover from M. the amount he agreed to pay:

*Held,* that the contract was not within the statute of frauds; that the sale of the house to M. was a deliberate indication of intent to abandon the property for school purposes; that it was not the deed of the school district that was necessary to execute the contract but its act of abandonment, and upon abandonment the property immediately reverted to the owner of the fee, and the matter became absolute, conclusive, and irrevocable; that therefore the school district was entitled to recover.—*School District of Wilkens Twp. vs. Milligan.*

---

The rule that an addition to the signature of an indorser to a promisory note (*e. g.,* the word "President") will not exempt the indorsee from individual liability, does not extend to cases where the note remains in the hands of the original indorsee, who took it in payment of a debt due by a company of which the indorser was President, and with full knowledge that the indorsement was intended to be the contract of the company.

In an action upon a promisory note brought by the indorsee against the indorsers, the defendant filed an affidavit of defence setting forth "that the note was given to the People's Gas Company, of which I am President, and indorsed by me as President, and given to the plaintiff in payment of a debt due by the company:"

*Held* (affirming the judgment of the Court below), that the affidavit was sufficient.—*Seffert et. al. vs. Lowe.*